STATE BANK OF MT. HOREB, Appellant, vs. BANKING COMMISSION, Respondent.

*October 10, 1941—February 12, 1942.*

192

For the appellant there was a brief by *Spohn, Ross, Stevens & Lamb* of Madison, and oral argument by *Francis Lamb* and *Frank A. Ross.*

For the respondent there was a brief by *Affeldt & Lichtsinn,* attorneys, and *Eldred Dede* of counsel, all of Milwaukee, and oral argument by *Mr. George A. Affeldt* and *Mr. Dede.*

WICKHEM, J.  The question upon this appeal relates solely to the legal effect of the agreement by the State Bank to pay depositors of the Mount Horeb Bank an amount equivalent to a further fifteen per cent of the deposit liability. We consider that by this agreement the State Bank became a surety for the agreed portion of the debt of the Mount Horeb Bank. It is evident that this promise is set in quite a different background and is of a purport different from the agreement to assume sixty per cent of the Mount Horeb Bank's deposit liabilities. As to the latter, the Mount Horeb bank was fully discharged of its debt to depositors in consideration of the transfer of certain of its assets to the State Bank. The legal effect of the promise to pay a further fifteen per cent becomes quite clear when the disposition of the remaining property and assets is considered. The assets taken by the State Bank in return for a sixty per cent absolute liability and involving dis-

charge of the Mount Horeb Bank were those desirable assets whose liquidation upon a favorable basis could be predicted with sufficient certainty to warrant such an undertaking. The remaining assets were of less certain value and greater difficulty of liquidation. These were segregated into a trust for the benefit of depositors. As to fifteen per cent of the remaining forty per cent of deposit liability the State Bank was willing to assume an absolute obligation to pay, and this willingness was expressed in the agreement. Neither the willingness nor the agreement, however, involved discharge of the liability of the Mount Horeb Bank, and the trusteed assets were not purchased by the State Bank.

In Restatement of Security, § 82, suretyship is thus defined:

"Suretyship is the relation which exists where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform."

The promise of the State Bank has the following characteristics of suretyship:

(1) A pre-existing obligation of the Mount Horeb Bank in respect of which there has been no discharge or novation.

(2) The undertaking of this obligation by the State Bank.

(3) The fact that both obligations run to depositors who are entitled to a single performance.

(4) The fact that as between the two obligors, the Mount Horeb Bank, rather than the State Bank, should perform.

The fact that in terms the State Bank undertook absolutely to pay in no way impairs the conclusion that it assumed the obligation of a surety. As pointed out in comment $f$ to § 82, Restatement of Security:

"When the statement is made that the principal should perform, or that the principal has the principal or primary duty and the surety an accessorial or a secondary duty, it does not

mean that the creditor's assertion of his right against the surety must be postponed until some action is taken against the principal. So far as the creditor is concerned, the surety may be the primary obligor. Where principal and surety are bound jointly, from the standpoint of the creditor there is no secondary liability."

The agreement of the trustees to pay over to the State Bank the net proceeds of the liquidation of the trusteed assets to the amount of the latter's liability was obviously a provision for the security or indemnification of the State Bank, and the fact that a surety has security or that the source of his reimbursement or indemnification is disclosed by the contract does not prevent the relation being one of suretyship.

The foregoing completely disposes of this case. It is wholly immaterial that in connection with a reorganization of the State Bank its liability as surety upon the "E certificates" was scaled down or deferred. These negotiations and agreements affect its liability but have no effect whatever upon its right to proceeds of the trust. Since the latter are at most simply to secure the surety's right to indemnity the State Bank can claim only such sums as it may from time to time pay in discharge of its obligation as surety. Had the holders of the Class E certificates, within a week of the agreement, and before any payments by the State Bank, surrendered them and forgiven the debt, the situation would not be different. The liability of the surety would be gone but so also would its right to indemnity and with it the right to any funds standing as its security.

For the foregoing reasons we conclude that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). My reading of the record convinces me that the relation of principal and surety between the State Bank and the Mount Horeb Bank in respect to the holders of the E certificates under the agreement of January, 1932, was terminated when the stabilization agree-

ment entered into on January 23, 1933, by all the interested parties became effective. Then a complete change in relationships was agreed to, the State Bank became the owner of the fund representing the fifteen per cent deposit liability and the sole debtor on that account to those certificate E holders who were parties to the new agreement.